UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA K. SANDERS,

     Plaintiff,                 No. 23-cv-10788

v                        HON. JUDITH E. LEVY

MICHIGAN ATTORNEY DISCIPLINE    MAG. KIMBERLY G. ALTMAN
BOARD,

     Defendant.

**DEFENDANT MICHIGAN
ATTORNEY DISCIPLINE
BOARD'S MOTION TO DISMISS**

_____

Brenda K. Sanders
Pro Se Plaintiff
P. O. Box 953
Lincoln Park MI 48146
(313) 685-1096
(803) 991-1137
brendakarensanders@outlook.com

_____

Cassandra A. Drysdale-Crown (P64108)
Erik A. Grill (P64713)
Attorneys for Defendant
Michigan Department of Attorney General
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
grille@michigan.gov

_____/

## DEFENDANT MICHIGAN ATTORNEY DISCIPLINE BOARD'S MOTION TO DISMISS

Defendant Michigan Attorney Discipline Board (ADB), through their counsel and under Fed. R. Civ. P 12(b) (1) and (6), moves this Court to dismiss Sanders' first amended complaint and states in support:

1.     The Michigan Attorney Disciple Board (ADB) is the adjudicative arm of the Michigan Supreme Court for discharge of the Court's exclusive constitutional responsibility to supervise and discipline Michigan attorneys.  MCR 9.110(A).

2.      On July 1, 2015, the Michigan Supreme Court ordered Sanders' removal from office as a 36th District Court judge for the City of Detroit. (ECF No.12, ¶ 3, PageID.34.)

3.     In 2015, Sanders' license to practice law in Michigan was transferred to inactive status. (*Id*., ¶ 48, PageID.39.)

4.     On March 9, 2017, Sanders filed an amended complaint in the U.S. District Court for the Eastern District of Michigan against 13 defendants— including the ADB—raising various purported claims against the defendants involving: (1) violation of the Americans with Disabilities Act (ADA); (2) hostile work environment; (3) racial, gender, and religious discrimination in violation of Title VI of the Civil Rights Act of 1964; (4) abuse of process; (5) violation of the Fair Debt Collection Act; (6) violation of the Michigan Whistleblower Protection

Act; (7) fraudulent misrepresentation; (8) libel; (9) defamation; (10) tortious interference with a business relationship; and (11) legal malpractice.

5.      On March 26, 2018, the Court entered an order holding the Eleventh Amendment immunity bars Sanders' claims against the ADB and granting the ADB's motion to dismiss Sanders' claims of libel, defamation, and negligence against it.  *Sanders v. Mich. Supreme Court*, 2018 U.S. LEXIS 49188 (E.D. of Mich. 2018); 2018 WL 1466085.

6.      Following the denial of Sanders' 2019 Petition to Reinstate her license to practice law (ECF No. 12, ¶ 43 PageID.38), on April 4, 2023, Sanders filed this instant lawsuit against the ADB. (ECF No. 1.)

7.      On June 14, 2023, Sanders filed her first amended complaint against ADB. (ECF No. 12.)

8.      Sanders' federal claims and claims for punitive damages against the ADB are barred by the Eleventh Amendment.

9.      Sanders' state-law claims against the ADB are barred by the Eleventh Amendment, the Governmental Liability for Negligence Act (GTLA), Mich. Comp. Laws § 691.1407, the Mich. Ct. Rule 9.125, and the Rooker-Feldman doctrine.

10.      On September 18, 2023, counsel herein emailed Sanders, in *pro per*, seeking concurrence in this motion and included the basis for this motion.

However, as of 1:00 p.m. on September 20, 2023, Sanders failed to respond to this email.  Thus, concurrence in this motion was not obtained.

Respectfully submitted,


*/s/Cassandra Drysdale-Crown*
Cassandra A. Drysdale-Crown
Assistant Attorney General
Attorney for Defendant
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
P64108

Dated:  September 20, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA K. SANDERS,

    Plaintiff,                    No. 23-cv-10788

v                                HON. JUDITH E. LEVY

MICHIGAN ATTORNEY DISCIPLINE      MAG. KIMBERLY G. ALTMAN
BOARD,

    Defendant.                **BRIEF IN SUPPORT OF**
                               **DEFENDANT MICHIGAN**
                               **ATTORNEY DISCIPLINE**
                 **BOARD'S MOTION TO DISMISS**

_____

Brenda K. Sanders
Pro Se Plaintiff
P. O. Box 953
Lincoln Park MI 48146
(313) 685-1096
(803) 991-1137
brendakarensanders@outlook.com

_____

Cassandra A. Drysdale-Crown (P64108)
Erik A. Grill (P64713)
Attorneys for Defendant
Michigan Department of Attorney General
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
grille@michigan.gov

_____/

**BRIEF IN SUPPORT OF DEFENDANT MICHIGAN ATTORNEY DISCIPLINE BOARD'S MOTION TO DISMISS**

Cassandra Drysdale-Crown
Assistant Attorney General
Attorney for Defendant
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
P64108

Erik A. Grill
Assistant Attorney General
Attorney for Defendant
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
grille@michigan.gov
P64713

Dated:  September 20, 2023

# TABLE OF CONTENTS

Page

Table of Contents ................................................................. i

Index of Authorities ........................................................... iii

Concise Statement of Issues Presented ................................. ix

Introduction ...........................................................................1

    Removal from judiciary and law license transferred to inactive status...........1

    Appeal to the U.S. Sixth Circuit Court of Appeals .........................................3

    Sanders' current lawsuit (*Sanders II*) ...............................................................3

Standard of Review ...............................................................6

Argument................................................................................7

I.    Sanders' Amended Complaint fails to state plausible federal claims upon which relief may be granted against the ADB. ......7

II.    Sanders fails to plead plausible state-law claims against the ADB..............12

    A.    Sanders' ELCRA claims in Count V fail as a matter of law..............12

        1.    Sanders pleads no plausible claim of discrimination in violation of the ELCRA. ..........................................................12

        2.    Sanders' ELCRA claim against the ADB is barred by Eleventh Amendment immunity. ...............................................14

    B.    Sanders pleads no plausible state common law tort claims against the ADB in Counts II, III, IV, and VI.....................................15

        1.    Sanders fails to plead a defamation claim in Count III. ...........15

        2.    Sanders fails to plead a libel claim in Count III. ......................17

        3.    Sanders fails to plead a claim of intentional publication of injurious falsehoods in Count II. ..........................................18

4.      Sanders fails to plead a claim of intentional infliction of emotional distress in Count VI. ................................................19

5.      Sanders fails to plead a claim of false light violation of privacy in Count IV. ...............................................20

III.    The Eleventh Amendment bars Sanders' state and federal law claims against the ADB.................................................................22

IV.    Sanders' state law claims are barred by immunity under Michigan's governmental tort liability act and by Michigan court rule..........................26

A.      The Michigan Governmental Tort Liability Act.................................26

B.      Michigan Court Rule 9.125.................................................29

V.     Sanders' claims against the ADB are barred by the Rooker-Feldman doctrine. ....................................................................30

Certificate of Service ..........................................................32

# INDEX OF AUTHORITIES

Page

## Cases

*Abick v. State of Michigan,* 803 F.2d 874 (6th Cir. 1986) ................................. 25

*Alabama v. Pugh*, 438 U.S. 781 (1978) ........................................................ 23

*Alia v. Michigan Supreme Court,* 906 F.2d 1100 (6th Cir. 1990) ...................... 25

*Angel v. Kentucky,* 314 F.3d 262 (6th Cir. 2002) ............................................. 7

*Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) .................. 11

*Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309 (6th Cir. 2014) ......................... 30

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................. passim

*Atkinson v. Farley*, 171 Mich. App. LEXIS 784 (1988) ................................... 20

*Awad v. Reilly*, 2022 Mich. App. LEXIS, \*17 (2022) ...................................... 20

*Ballard v. Ypsilanti Twp.,* 577 N.W.2d 890 (Mich. 1998) ............................... 28

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008) ................................................ 2

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ....................... 23

*Bedford v. Witte*, 896 N.W.2d 69 (Mich. 2016) .............................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 7, 8

*Blanton v. United States*, 94 F.3d 227 (6th Cir. 1996) .................................... 31

*Brand v. Motley*, 526 F.3d 921 (6th Cir. 2008) .............................................. 11

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) .................................... 2, 6

*Catz v. Chalker,* 142 F.3d 279 (6th Cir. 1998) .............................................. 31

*Collins v. Detroit Free Press, Inc.*, 627 N.W.2d 5 (Mich. Ct. App. 2001) ........... 18

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
140 U.S. 1009 (2020) .................................................................. 11, 13

*Detroit Free Press, Inc, v. Oakland Co Sheriff*, 418 N.W.2d 124 (Mich. Ct.
App. 1987) ........................................................................................ 21

*Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462
(1983) .............................................................................................. 30

*Doe v. Mills*, 536 N.W.2d 824 (Mich. Ct. App. 1995) ..................................... 20

*Doe v. Wigginton,* 21 F.3d 733 (6th Cir. 1994)................................................. 9

*Duncan v. State*, 774 N.W.2d 89 (Mich. Ct. App. 2009)................................... 27

*Duran v. Detroit News, Inc.*, 504 N.W.2d 715 (Mich. Ct. App 1993) ................ 21

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................ 15

*Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir.
2007) ................................................................................................ 9

*Elrod v. Mich. Supreme Court*, 104 Fed. Appx. 506 (Mich. 2004) .................... 31

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)........................................... 23, 26

*Ex parte Young,* 209 U.S. 123 (1908)............................................................. 25

*Freeman v. Michigan, Dep't of State*, 808 F.2d 1174 (6th Cir. 1987) ............... 15

*Garry v. Geils,* 82 F.3d 1362 (7th Cir. 1996)................................................... 30

*General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119 (6th Cir. 1990)........... 18

*Gentek Bldg. Prods. Inc., v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir.
2007) ................................................................................................ 6

*Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806
(6th Cir. 2015) ................................................................................... 6

*Gottfried v. Medical Planning Servs.,* 142 F.3d 326 (6th Cir. 1998) ............... 30

*Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008) ............................................. 24

*Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999)..............................................24

*Haines v. Kerner*, 404 U.S. 519 (1972) ...........................................................7

*Hazle v. Ford Motor Co*, 628 N.W.2d 515 (Mich. 2001) ..................... 12, 13, 14

*Horace v. City of Pontiac*, 575 N.W.2d 762 (Mich. 1998) ...............................27

*Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747 (6th Cir. 2003) ......................................................................................31

*In re Cook*, 551 F.3d 542 (6th Cir. 2009)........................................................31

*In re Honorable Brenda K. Sanders Judge, 36th District Court*, 865 N.W.2d 30 (Mich. 2015) ........................................................................2

*In re Justice*, 2021 U.S. App. LEXIS 25941, *13 (6th Cir. 2021) ......................9

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)....................................11

*Kefgen v. Davidson*, 617 N.W.2d 351 (Mich. Ct. App. 2000)...........................18

*Kentucky v. Graham*, 473 U.S. 159 (1985) .....................................................26

*Kerbersky v. Northern Mich. Univ.*, 582 N.W.2d 828 (Mich. 1998) ..................27

*Lawson v. Shelby County, TN,* 211 F.3d 331 (6th Cir. 2000) .............................25

*Locricchio v. Evening News Ass'n*, 476 N.W.2d 112 (Mich. 1991) ....................17

*Lucas v. Awaad*, 830 N.W.2d 141 (2013) ........................................................19

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) ...............................................25

*Masson v. New Yorker Magazine*, 501 U.S. 496 (1991)....................................18

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) ................................24

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002) ...........................9

*Ohio Nat'l Life Ins. Co., v. United States*, 922 F.2d 320 (6th Cir. 1990) ..............6

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) .. 23, 25, 26

v

*Prysak v. RL Polk Co*, 193 Mich App 1 (1992) ................................................ 16

*Pucci v. Nineteenth Dist. Court*, 628 F.3d 752 (6th Cir. 2010) ......................... 24

*Puetz v. Spectrum Health Hosps. & Kevin Splaine*, 919 N.W.2d 439(Mich. Ct. App. 2018) ................................................................................. 20, 21

*Robinson v. City of Detroit*, 613 N.W.2d 307 (Mich. 2000) ............................. 27

*Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923) ................................... 30, 31

*Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383 (6th Cir. 2016) .............................. 6

*Rouch v. Enquirer & News*, 487 N.W.2d 205 (Mich. 1992) .............................. 18

*Runyon v. McCrary*, 427 U.S. 160 (1976) ................................................ 10

*Sanders Confectionery Prod. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir. 1992) ................................................................................................. 30

*Sanders v. Mich. Supreme Court*, 2018 U.S. LEXIS 30896, *2-3 (E.D. of Mich. 2018)................................................................................. 2, 3, 29

*Sanders v. Mich. Supreme Court, 2018 U.S. LEXIS 49188 (E.D. of Mich. 2018); 2018 WL 1466085* ...................................................................... 2, 3

*Sanders v. Michigan Supreme Court, et al.*, 2018 U.S. App. LEXIS 20026, *2 (6th Cir. 2018)................................................................................. 3

*Sarkar v. Doe*, 897 N.W.2d 207 (Mich. Ct. App. 2016)................................... 15

*See Hans v. Louisiana,* 134 U.S. 1 (1890)...................................................... 22

*See Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)................................... 30

*Sefa v. Kentucky*, 510 Fed. Appx. 435 (6th Cir. 2013)................................... 24

*Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186 (Mich. 2003) ........................................................................................... 13, 14

*VanVorous v. Burmeister*, 687 N.W.2d 132 (Mich. Ct. App. 2004.................... 19

*Wade v. Dep't of Corrections*, 483 N.W.2d 26 (Mich. 1992) ............................ 27

*Warren v. Burdi*, 2011 U.S. Dist. LEXIS 14951, 52 (E.D. of Mich. 2011) .......... 29

*Wayside Church v. Van Buren County,* 847 F.3d 812 (6th Cir. 2017) ................... 6

*Welch v. Texas Dep't of Highways and Public Transp.,* 483 U.S. 468 (1987) ...... 22

*Wells v. Brown et al*, 891 F.2d 591 (6th Cir. 1989) ............................................ 7

## Statutes

42 U.S.C. § 1981 ........................................................................................ passim

42 U.S.C. § 1981(a) ...........................................................................................10

42 U.S.C. § 1983 ................................................................................................11

Mich. Comp. Laws § 37.2201 ............................................................................12

Mich. Comp. Laws § 37.2202(1)(a) ................................................................5, 14

Mich. Comp. Laws § 600.2911(6) .......................................................................5

Mich. Comp. Laws § 691.1401 ..................................................................... 27, 28

Mich. Comp. Laws § 691.1401(a) .......................................................................27

Mich. Comp. Laws § 691.1401(g) .......................................................................27

Mich. Comp. Laws § 691.1407 ...........................................................................28

Mich. Comp. Laws § 691.1407(1) .................................................................. 27, 29

Mich. Comp. Laws § 691.1407(4) .......................................................................28

Mich. Comp. Laws § 691.1407(7) .......................................................................28

Mich. Comp. Laws §37.2202(1)(a) .....................................................................14

Mich. Comp. Laws 691.1401(b) .........................................................................27

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................6, 32

Fed. R. Civ. P. 12(b)(6)...................................................................................2, 7

Fed. R. Civ. P. 8(a)(2)..........................................................................................8

Fed. R. Civ. P.12(b)(6).................................................................................. 10, 32

Fed. Rule Civ. P. 12(b)(1)...................................................................................26

Mich. Ct. R. 7.305(C)(4)......................................................................................4

Mich. Ct. R. 9.110(A) ......................................................................................4, 24

Mich. Ct. R. 9.110(E)....................................................................................27, 29

Mich. Ct. R. 9.115(C) ...........................................................................................5

Mich. Ct. R. 9.118..................................................................................................4

Mich. Ct. R. 9.122..................................................................................................4

Mich. Ct. R. 9.125................................................................................................29

Mich. Ct. R. 9.126................................................................................................17

Mich. Ct. Rule 9.110(E)(1)-(6) ............................................................................4

## Constitutional Provisions

Const. 1963, art. 6, §1 .........................................................................................24

**CONCISE STATEMENT OF ISSUES PRESENTED**

1. Under the Federal Rules of Civil Procedure, a complaint must put a defendant on notice as to what is being claimed and the basis for those claims. Are Sanders' federal and state law claims subject to dismissal where the complaint fails to state plausible claims upon which relief may be granted?

2. 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts but does not provide a private cause of action to persons deprived of those rights. The express cause of action for damages created by 42 U.S.C. § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in Section 1981 claims against state governmental units. Are Sanders federal and state law claims barred where she fails to plead Section 1983 claims?

3. Michigan's Elliott-Larsen Civil Rights Act (ELCRA) prohibits discrimination in employment, housing, education, and public accommodations based on race, color, national origin, age, sex, gender identification, sexual orientation, height, weight, familial status, or marital status. Here, Sanders alleges that the Michigan Attorney Discipline Board discriminated against her on the basis of her race, sex or religion, but the complaint fails to state a prima facie case for employment discrimination under the ELCRA. Has Sanders failed to state plausible claim against the Defendant under the ELCRA?

4. The Eleventh Amendment is a bar to lawsuits—including money damages—against the states and state agencies unless specifically overridden by an act of Congress, or unless the state has consented to be sued. Are Sanders' claims subject to dismissal where neither the State nor the Michigan Attorney Discipline Board has consented to this lawsuit and where its immunity has not been abrogated by Congress?

5. The Michigan Governmental Liability for Negligence Act (GTLA) provides immunity from torts to state governmental agencies. The Michigan Attorney Discipline Board is a governmental agency. Are Sanders' state law claims against the Defendant barred by state law?

6.  Michigan Court Rule 9.125 provides absolute immunity to the Michigan Attorney Discipline Board from suit.  Are Sanders' state law claims against the Defendant barred by immunity under the Rule?

7.  Sanders' claims against Defendant are predicated upon the 2015 state court proceedings removing her from judicial office and placing her license to practice law on inactive status and the 2019 denial of her Petition to Reinstate her law license.  The Sixth Circuit has held that District Courts are without jurisdiction to review such decisions.  Are Sanders' federal and state claims barred by the Rooker-Feldman doctrine?

8.  Are Sanders' state-law claims for punitive damages barred by the Michigan Attorney Discipline Board's sovereign immunity?

## INTRODUCTION

This is former Michigan Judge Brenda Sanders' second lawsuit predicated on allegations of failure to properly serve notice of the 2015 disciplinary hearing that led to the placement of her law license into an inactive status.  Her first lawsuit against several defendants—including the Michigan Attorney Discipline Board (ADB)—raised purported federal claims of race, sex, and religious discrimination and state law claims of negligence, libel, and defamation, but the ADB's motion to dismiss was granted.  The foundation for this lawsuit also arises from Sanders' 2015 claims and was brought under 42 U.S.C. § 1981 alleging state law claims against the ADB stemming from the 2019 denial of Sanders' Petition to Reinstate her law license, including state law claims alleging race, sex, and age discrimination, libel, defamation, and intentional infliction of emotional distress. But like her earlier lawsuit, the claims are likewise subject to dismissal.

## STATEMENT OF FACTS

**Removal from judiciary and law license transferred to inactive status.**

On July 1, 2015, the Michigan Supreme Court ordered Sanders' removal from the judicial office of the 36th District Court for the City of Detroit.  *In re Honorable Brenda K. Sanders Judge, 36th District Court*, 865 N.W.2d 30 (Mich.

2015).[1]  Subsequently, on December 1, 2015, Sanders' license to practice law in

Michigan was transferred to inactive status.[2]

**Sanders' previous lawsuit (*Sanders I*)**

On August 15, 2016, Sanders filed suit against several state and federal

defendants—including the ADB—stemming from her removal from state judicial

office and subsequent transfer of her license to practice law to inactive status.

*Sanders I* alleged claims against the ADB of negligence, libel, and defamation

relative to her license to practice law in Michigan.  *Sanders v. Mich. Supreme

Court*, 2018 U.S. LEXIS 30896, *2-3 (E.D. of Mich. 2018) (magistrate judge's

report and recommendation to grant the ADB's motion to dismiss); *see Sanders v.

Mich. Supreme Court*, 2018 U.S. Dist. LEXIS 49188 (E.D. of Mich. 2018); 2018

WL 1466085 (magistrate judge's report and recommendation accepted by the

court).  On February 23, 2018, the Magistrate Judge entered a report and

---

[1] Sanders incorrectly avers her license was placed on inactive status on July 1,
2015.  (ECF No. 12, ¶ 17, PageID.35,.)
[2] *See* https://records.adbmich.org/adbmich/no/en/item/1179/index.do.  When a
court is presented with a Rule 12(b)(1) motion that challenges the factual existence
of subject-matter jurisdiction, the court can consider evidence outside of the
pleadings.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  For a Rule
12(b)(6) motion, it may consider the complaint and any exhibits attached thereto,
public records, items appearing in the record of the case and exhibits attached to
defendant's motion to dismiss so long as they are referred to in the Complaint and
are central to the claims contained therein.  *Bassett v. NCAA*, 528 F.3d 426, 430
(6th Cir. 2008).

recommendation that the ADB, an adjudicative arm of the Supreme Court, is immune to Sanders' claims of negligence, libel, and defamation under the Eleventh Amendment and for the District Court to grant the ADB's motion to dismiss. *Sanders*, 2018 U.S. Dist. LEXIS 30896, *19.  On March 26, 2018, the District Court entered an order adopting the magistrate judge's report and recommendation and dismissed Sanders' claims against ADB.  *Sanders*, 2018 U.S. Dist. LEXIS 49188, *5.

**Appeal to the U.S. Sixth Circuit Court of Appeals**

On May 24, 2018, Sanders filed an interlocutory appeal from the March 26, 2018 Order granting several Defendants' motions to dismiss to the Sixth Circuit. *Sanders v. Michigan Supreme Court, et al.*, 2018 U.S. App. LEXIS 20026, *2 (6th Cir. 2018).  On July 18, 2018, the Court dismissed Sanders' interlocutory appeal for lack of appellate jurisdiction from the partial decision.  *Id*.  On October 1, 2019, the Sixth Circuit entered an order dismissing Sanders' claim of appeal for want of prosecution.  (Ex A, 10/1/19 Order.)

**Sanders' current lawsuit (*Sanders II*)**

Although Defendant does not admit the accuracy or completeness of the facts alleged in Sanders' complaint, it will rely on her allegations for purposes of

this motion.  On April 4, 2023, Sanders filed the instant lawsuit against the ADB.[3]
(ECF No. 1.)  On June 14, 2023, Sanders filed her first amended complaint.  (ECF
No. 12.)[4]  The ADB is the adjudicative arm of the Michigan Supreme Court for
discharge of its exclusive constitutional responsibility to supervise and discipline
Michigan attorneys.  Mich. Ct. R. 9.110(A).  Among other things, the ADB
appoints hearing panels and assigns cases to them for hearing; reviews final and
interlocutory panel orders; and disciplines and reinstates attorneys.  Mich. Ct. Rule
9.110(E)(1)-(6).  A party to a discipline matter or a complainant may obtain review
of a final order of a hearing panel by the ADB.  Mich. Ct. R. 9.118.  An aggrieved
party (including a complainant) may apply for leave to appeal a final ADB order to
the Michigan Supreme Court.  Mich. Ct. R. 9.122; Mich. Ct. R. 7.305(C)(4).

Sanders' amended complaint arises from her 2019 Petition for Reinstatement
of her license from inactive status (ECF No. 12, ¶ 20, PageID.36), where a hearing
was held, and she appeared, testified, and represented herself (*id.*, ¶¶ 21-22,
PageID.36).  At this hearing, Sanders raised claims against the Michigan Attorney
Grievance Commission (AGC) stemming from 2015 when her license was placed

---

[3] Notably, Plaintiff has not served the ADB with the instant complaint.  By
responding herein, the ADB maintains all defenses and objections to this lawsuit.

[4] Plaintiff's amended complaint discontinues sequential numbering after ¶ 69,
(ECF No. 12, PageID.41), but immediately begins anew with ¶ 60 and maintains
this sequence through the end of the complaint.

on inactive status.  (*Id.*, ¶¶ 37-39, PageID.37-38.)  Now, Sanders claims the AGC

failed to comply with Mich. Ct. R. 9.115(C) in violation of the Fourteenth

Amendment (*id.*, ¶ 37, PageID.37), and failed to provide her with due process

before taking any action on the status of her license to practice law  (*id.*, ¶ 38,

PageID.37).

In Sanders' instant amended complaint, she alleges state and federal claims

against the ADB, including: (1) 42 U.S.C. § 1981 racial discrimination for failing

to reinstate her law license (*id.*, ¶¶ 62-69, PageID.41); (2) intentional publication of

injurious falsehoods (*id.*, ¶¶ 61-64, PageID.42); (3) libel and defamation in

violation of Mich. Comp. Laws § 600.2911(6) for publishing the March 31, 2020

decision denying her application for reinstatement of her law license from inactive

status (*id.*, ¶¶ 65-75, PageID.42-43); (4) false light violation of privacy for

publication of false statements and making false statements to the public (*id.*, ¶¶

76-85, PageID.43-44); (5) violation of the ELCRA's employment provisions Mich.

Comp. Laws § 37.2202(1)(a), which prohibits discrimination of an applicant for

employment based on her race, age, and sex (*id.*, ¶¶ 86-94, PageID.44-46); and

intentional infliction of emotional distress (*id.*, ¶¶ 95-101, PageID.46).  Sanders

seeks compensatory damages, an award of past and future wages, punitive

damages, exemplary damages, and costs including reasonable attorney fees.  (*Id.*, ¶

102, PageID.46-47.)

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is

appropriate where Sanders' claims are barred by lack of standing or by the State's

Eleventh Amendment immunity.  The standard of review for a 12(b)(1) motion

depends on whether the defendant makes a facial or factual challenge to subject

matter jurisdiction.  *Wayside Church v. Van Buren County,* 847 F.3d 812, 816-17

(6th Cir. 2017).  A facial attack "questions [] the sufficiency of the pleading." *Rote*

*v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).  "When reviewing a

facial attack, a district court takes the allegations in the complaint as true." *Glob.*

*Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir.

2015) (quoting *Gentek Bldg. Prods. Inc., v. Sherwin-Williams Co.*, 491 F.3d 320,

330 (6th Cir. 2007)).  A factual attack questions the factual existence of subject

matter jurisdiction.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  "In

the case of a factual attack, a court has broad discretion with respect to what

evidence to consider . . . including evidence outside of the pleadings, and has the

power to weigh the evidence and determine the effect of that evidence on the

court's authority to hear the case.  *Id*. at 759.  And under a factual attack, no

presumptive truthfulness applies to Plaintiff's factual allegations.  *Ohio Nat'l Life*

*Ins. Co., v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Moreover, the Court

has wide discretion to allow affidavits and other documents to resolve disputed

6

jurisdictional facts, and "when facts presented to the district court give rise to a

factual controversy, the district court must therefore weigh the conflicting evidence

to arrive at the factual predicate that subject matter jurisdiction exists or does not

exist." *Id.* at 325. The plaintiff bears the burden of proving jurisdiction when

subject matter is challenged. *Angel v. Kentucky,* 314 F.3d 262, 264 (6th Cir. 2002).

Sanders' claims are also subject to dismissal under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted. "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(cleaned up). A claim is plausible on its face "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*., at 678-679. The complaint must contain

"more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.   Sanders' Amended Complaint fails to state plausible federal claims upon which relief may be granted against the ADB.

*Pro se* pleadings must be construed liberally by the Court. See *Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972). However, although pro se litigants are afforded

some leniencies, courts are not required to conjure unstated allegations or guess the

Sanders' claims. *E.g*., See *Wells v. Brown et al*, 891 F.2d 591, 594 (6th Cir. 1989)

7

(citations omitted).  A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. 544; *Ashcroft*, 556 U.S. 662.  The Plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555.  The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true.  *Id.*

Here, Sanders has failed to meet even these minimal standards.  Sanders has pleaded no particularized factual basis to support her claims against the ADB. Moreover, her amended complaint fails to present any manner of factual development identifying any particularized acts or omissions implicating the ADB violated any federal or state laws or discriminated against Sanders.  Instead, she avers without further elaboration or support that the ADB: (1) "did not successfully refute [her] contention that she was denied due process" in violation of the Fourteenth Amendment before her law license was transferred to inactive status (ECF No. 12, ¶ 40, PageID.38); (2) should have reinstated her law license "without . . . penalties or conditions" (*id*., ¶ 44, PageID.38); continues to publish an

8

"unjustified decision which incorrectly describes the Plaintiff as 'not competent to practice law in the State of Michigan'" (*id*., ¶ 45, PageID.39); website indicates that she is not an attorney licensed to practice law in Michigan (*id*., ¶ 47, PageID.39); and seeks to punish her by imposing court costs when it knows she could not pay these (*id*., ¶ 46, PageID.40).  And to the extent Sanders' claims a Fourteenth Amendment due process violation (*see* ECF No. 12, ¶ 40, PageID.38), these claims should be dismissed because a hearing was held on her petition for reinstatement of her law license (*id*., ¶ 21, PageID.36), and "a fair trial in a fair tribunal is a basic requirement of due process," including before administrative panels like [] attorney discipline hearing panels.  *In re Justice*, 2021 U.S. App. LEXIS 25941, *13 (6th Cir. 2021) (quotation marks omitted.)  Moreover, Plaintiff pleaded no facts to sustain procedural and substantive due process claims.  *See Doe v. Wigginton,* 21 F.3d 733, 738 (6th Cir. 1994); *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

Although Sanders perceives these alleged facts as demonstrating violations of federal and state laws, these are best characterized as "legal conclusions masquerading as factual allegations." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  And, this Court cannot take as true "legal conclusions" that are "couched as a factual allegation", or "mere conclusory

statements" or "naked assertions devoid of further factual development." *Ashcroft*, 556 U.S. at 678 (cleaned up).

Therefore, in the absence of any allegations stating a plausible cause of action, giving notice of the nature of the claims, or establishing subject matter jurisdiction, Sanders has failed to state a claim against the ADB and the complaint against it must be dismissed pursuant to Fed. R. Civ. P.12(b)(6).

Further, Sanders claims jurisdiction under 42 U.S.C. § 1981. (ECF. No. 12, ¶ 51, PageID.39.) Section 1981 provides "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and . . . the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

The Supreme Court has explained that Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). But "[j]ust because a statute includes rights-creating language does not mean that it also provides a private cause of action to persons deprived of those rights, so long as Congress has also provided an effective

10

means of vindicating the right elsewhere in federal law." *Arendale v. City of Memphis*, 519 F.3d 587, 598 (6th Cir. 2008).  The Sixth Circuit has concluded that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 state governmental units." *Arendale*, 519 F.3d at 598-599 (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 733 (1989)). "The express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981when the claim is pressed against a state actor." *Jett*, 491 U.S. at 735 (quotation marks omitted).  Moreover, to prevail in Section 1981 claims "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 U.S. 1009, 1019 (2020).  And to state a racial discrimination claim, the plaintiff must "allege sufficient facts to show that a state actor intentionally discriminated against him because of membership in a protected class." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008).

But here Sanders' fails to plead any claim under Section 1983. (ECF No. 12, ¶ 51, PageID.39.).  Next, Sanders fails to plead any facts demonstrating that she was denied reinstatement of her law license or employment due to her race.

11

Despite averring she was denied the benefits and privileges of her law license (*id.*, ¶ 67, PageID.39), and that she was "was an applicant for employment with the [ADB]" (*id.*, ¶ 89, PageID.45), these are insufficient to plausibly demonstrate she was denied reinstatement of her law license or employment because of her race. Moreover, couching these facts as legal conclusions is simply not enough to show she is entitled to relief.  *See Iqbal*, 556 U.S. at 678-79.

## II.   Sanders fails to plead plausible state-law claims against the ADB.

### A.   Sanders' ELCRA claims in Count V fail as a matter of law.

#### 1.   Sanders pleads no plausible claim of discrimination in violation of the ELCRA.

In Count V, Sanders claims employment discrimination based on race, age, and sex in violation of the ELCRA against the ADB.  The ELCRA prohibits discrimination in employment based on race, age, and sex, among other categories. Mich. Comp. Laws § 37.2201, *et seq.* (as amended).  A plaintiff asserting discrimination under ELCRA may show discrimination through either direct evidence or through indirect evidence.  *Hazle v. Ford Motor Co*, 628 N.W.2d 515, 520 (Mich. 2001).  Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Id.* (quotation marks and citation omitted).  "Under the direct evidence test, a plaintiff must present direct proof that the discriminatory animus

was causally related to the adverse employment decision." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).  To make an indirect evidence claim, a plaintiff must present evidence that "(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination." *Hazle*, 628 N.W.2d at 521. "While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* (citations omitted).  "In short, a plaintiff must offer evidence showing something more than an isolated decision to reject" a member of plaintiff's protected class. *Id.*

To implicate employment protections under the ELCRA, Sanders must plead facts plausibly demonstrating she was employed by or applied for employment with the ADB, and that but for her race, age, and sex she would have been employed by the ADB or—if she was already employed with the ADB—would otherwise not have been deprived of conditions and privileges of employment with the ADB.  See *Iqbal*, 556 U.S. at 678; *Comcast Corp.*, 140 U.S. at 1019.  Mich. Comp. Laws §37.2202(1)(a) provides that an employer shall not "[l]imit,

13

segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity or otherwise adversely affects that status of an employee or applicant." Sanders claims that the ADB intentionally discriminated against African American employees (ECF No. 12, ¶ 91, PageID.45), and discriminated against her based on her race, sex, and age (*id.*, ¶ 88, PageID.45), in violation of Mich. Comp. Laws § 37.2202(1)(a) (*id.*, ¶¶ 88-94, PageID.45-46), but she fails to implicate culpability of these purported ELCRA violations directly or indirectly to the ADB. Moreover, she pleads no facts demonstrating she had or has a contractual or employment relationship with the ADB that would invoke the employment provisions of the ELCRA or that the ADB's purportedly discriminatory animus was causally related to an adverse employment decision. *Sniecinski,* 666 N.W.2d at 186. Here, Sanders pleads no facts demonstrating she suffered an adverse employment action, was qualified for the position, or that an adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *Hazle*, 628 N.W.2d at 521. Thus, no facts are pled that plausibly support her claim that she was employed by or applied for employment with the ADB or that the ADB violated the ELCRA.

> **2.    Sanders' ELCRA claim against the ADB is barred by Eleventh Amendment immunity.**

In addition to failing to plead a plausible claim of discrimination in violation of the ELCRA, the Sixth Circuit has noted that "the fact that Michigan seeks to

prevent discrimination in the workplace by means of state law [*i.e.*, the ELCRA]

does not establish that it has agreed to become a defendant in federal court suits

based on violations of either state or federal law . . . [and] 'the fact that the state

has waived immunity from suit in its own courts is not a waiver of Eleventh

Amendment immunity in the federal courts.'" *Freeman v. Michigan, Dep't of

State*, 808 F.2d 1174, 1179 (6th Cir. 1987) (quoting *Edelman v. Jordan*, 415 U.S.

651, 677 n.19 (1974)).  Because the ADB is the state for purposes of the Eleventh

Amendment, Sanders cannot sue the ADB for ELCRA violations in federal court.

**B.    Sanders pleads no plausible state common law tort claims against the ADB in Counts II, III, IV, and VI.**

In addition to the claims discussed above, Sanders claims state common law

libel and defamation (Count III), intentional publication of injurious falsehoods

(Count II), intentional infliction of emotional distress (Count VI), and false light

violation of privacy (Count IV).

**1.    Sanders fails to plead a defamation claim in Count III.**

Under Michigan law, a defamation claim requires proof of four elements:

"(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged

communication to a third party, (3) fault amounting at least to negligence on the

part of the publisher, and (4) either actionability of the statement irrespective of

special harm (defamation per se) or the existence of special harm caused by

publication." *Sarkar v. Doe*, 897 N.W.2d 207, 220 (Mich. Ct. App. 2016).

First and foremost, Sanders pleads no facts supporting her claim that the ADB published the purported March 31, 2020 decision (ECF No.12, ¶¶ 70-71, PageID.43), following her December 8, 2019 hearing, or that this decision states she suffers from a "mental disability and is not eligible to practice law," or that the ADB's decision "constituted a false statement." (ECF No. 19, ¶¶ 68-69, PageID.42).  Simply, she fails to plead any facts whatsoever demonstrating this publication exists, or even if the decision was published, that it was published with malice (*id*, ¶ 72, PageID.43), falsely reflected the inactive status of her license to practice law (*id*. ¶ 71, PageID.43), or contained any false statements (*id*. ¶ 53, PageID.40).

Further, even if the published notices of the inactive status of Sanders' law license could be considered defamatory, Plaintiff's claim would still fail on the basis of qualified privilege.  "Privilege can be used as a defense in a defamation action." *Bedford v. Witte*, 896 N.W.2d 69, 72 (Mich. 2016) (citation omitted). "The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Prysak v. RL Polk Co*, 483 N.W.2d 629, 636 (Mich. Ct. App 1992) (citations omitted).  "A plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice, *i.e.*, with knowledge of its falsity or reckless

16

disregard of the truth." *Id.* But here, Sanders fails to plead any facts demonstrating the ADB acted or published information without good faith, or that the ADB acted or published information outside of law, policy, or procedure. *See* Mich. Ct. R. 9.126 (providing that "[f]ormal pleadings, reports, findings, recommendations, discipline, reprimands, transcripts, and orders resulting from hearings must be open to the public.")

### 2.      Sanders fails to plead a libel claim in Count III.

To establish a cause of action for the common law of libel, the burden is upon petitioner to prove defamatory meaning, falsity, fault, and publication. *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 125-126 (Mich. 1991). Specifically, "[a] cause of action for libel encompasses four components: 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Id*.   In determining whether libel exists, the court's "inquiry, however, remains the same whether the burden rests upon plaintiff or defendant.  Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified . . . Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded

truth would have produced." *Rouch v. Enquirer & News*, 487 N.W.2d 205, 215 (Mich. 1992) (internal quotation marks omitted) (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).  Here, Sanders' claim that the ADB published falsehoods is wholly unsupported (*see* https://records.adbmich.org/adbmich/no/en/item/1179/index.do), and she fails to plead facts demonstrating that even if the notices of transferring her law license to inactive status were false, the ADB knowingly published "falsehoods".  *Collins v. Detroit Free Press, Inc.*, 627 N.W.2d 5, **7 (Mich. Ct. App. 2001) (citing *Kefgen v. Davidson*, 617 N.W.2d 351 (Mich. Ct. App. 2000)).

### 3. Sanders fails to plead a claim of intentional publication of injurious falsehoods in Count II.

Next, Sanders claims that the ADB is liable for publication of injurious falsehoods.  (ECF No.12, ¶¶ 62-64, PageID.42.)  To establish a violation of this common law tort, Sanders must aver facts demonstrating the ADB intended to harm her or that the ADB knew its publications were false in reckless disregard of the truth.  *General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119, 1124 (6th Cir. 1990) (citing *Restatement (Second) of Torts* § 623A, at 334 (1977)).  However, for the same reasons discussed above where Sanders fails to plead plausible facts demonstrating libel and defamation, she fails to do the same here.

18

### 4.    Sanders fails to plead a claim of intentional infliction of emotional distress in Count VI.

Sanders also avers a claim of Michigan common law intentional infliction of emotional distress (IIED).  To state a tort claim for IIED under Michigan law, a plaintiff must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Lucas v. Awaad*, 830 N.W.2d 141, 150 (Mich. Ct. App. 2013). According to Sanders, the ADB's alleged conduct denying her Petition to Reinstate and publishing notices of the inactive status of her license to practice law (ECF No. 12, ¶¶ 71, PageID.43), were intentional, extreme, outrageous and were conducted under an ulterior motive or purpose that caused her severe and serious emotional distress (ECF No.12, ¶¶ 96-99, PageId.46).  These blanket assertions fail to identify any extreme or outrageous conduct or that the ADB intended to or actually acted recklessly.  Whether the alleged conduct may reasonably be regarded as extreme and outrageous generally presents a question of law for the court.  *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004).  The threshold for showing extreme and outrageous conduct is high, and no cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent.  *Id*. at 142.  Instead, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Awad v. Reilly*, 2022 Mich. App. LEXIS, *17 (2022) (internal

quotation marks omitted) (quoting *Atkinson v. Farley*, 171 Mich. App. LEXIS 784,

789 (1988)).  Plaintiff has not alleged *any* specific conduct by the ADB in support

of this claim.

Because Sanders fails to plead any facts plausibly claiming causation or

severe emotional distress or that the ADB acted outside of law, policy or

procedure, this claim must be dismissed.

### 5.    Sanders fails to plead a claim of false light violation of privacy in Count IV.[5]

"An invasion-of-privacy claim protects against four types of invasion of

privacy: '(1) intrusion upon the plaintiff's seclusion or solitude or into his private

affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3)

publicity that places the plaintiff in a false light in the public eye; and (4)

appropriation, for the defendant's advantage, of the plaintiff's name or likeness.'"

*Puetz v. Spectrum Health Hosps. & Kevin Splaine*, 919 N.W.2d 439, 448 (Mich.

Ct. App. 2018) (quoting *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. Ct. App.

1995)).  Here, Sanders' invasion of privacy claim appears to be based on the third

type: false light. "In order to maintain an action for false-light invasion of privacy,

---

[5] Sanders identifies Count IV as "false light violation of privacy", but no such common law tort was found.  As such, this claim is treated as a claim of false light invasion of privacy.

a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 721 (Mich. Ct. App 1993). "Further, 'the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.'" *Puetz*, 919 N.W.2d at 449 (quoting *Detroit Free Press, Inc, v. Oakland Co Sheriff*, 418 N.W.2d 124, 128 (Mich. Ct. App. 1987)). And lastly, "in order to establish a false light claim, a plaintiff must establish that when the defendant disseminated the information, it was done with actual knowledge or reckless disregard of the truth or falsity of the publicized matter." *Puetz*, 919 N.W.2d at 451.

Sanders fails to aver any facts demonstrating a claim of false light invasion of privacy against the ADB. First, Sanders avers no facts demonstrating that the March 31, 2020, decision was published by the ADB, or that the purported information regarding the inactive status of her law license or mental state (ECF No. 12, ¶ 83, PagedID.44), were unreasonably and highly objectionable and attributed false conduct to Sanders (ECF No. 12, ¶¶ 71-72, PageID.43; ¶ 83, PageID.44). Next, other than her averment that the ADB "acted with actual malice" (*id*., ¶ 83, PageID.44), she avers no facts supporting this claim. Last,

Sanders identifies no facts establishing that the ADB knew of the falsity or recklessly acted with disregard to the purported falsity when it published documents concerning her law license or that these publications would place her in a false light.  Sanders does not dispute that her law license is inactive (ECF No. 12, ¶ 71, PageID.43), but where she disputes the veracity of the contents of the ADB's publications (see *id*., ¶ 66, PageID.41), she avers no facts demonstrating any published statement were false.  Thus, Sanders fails to plausibly plead false light invasion of privacy against the ADB.

## III.   The Eleventh Amendment bars Sanders' state and federal law claims against the ADB.

Eleventh Amendment immunity provides a bar against Sanders' money damages claims against the ADB.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  Although the Eleventh Amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued.  *See Hans v. Louisiana,* 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.,* 483 U.S. 468, 472-73 (1987) (plurality opinion).

The Eleventh Amendment acts as a constitutional restriction on the federal judicial power "based in large part on 'the problems of federalism inherent in making one sovereign appear against its will in the courts of the other.'" *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984).  The Supreme Court has broadened the Eleventh Amendment's application to suits by citizens against their own state and held that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 360 (2001).  Further, the States' constitutional immunity under the Eleventh Amendments bars all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature, and extends to suits against state agencies or state departments unless specifically overridden by an act of Congress, or unless the state has consented to be sued.  *Ernst v. Rising,* 427 F.3d 351, 368 (6th Cir. 2005); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *United States v. Georgia,* 546 U.S. 151, 159 (2006).  Moreover, a state-law claim brought into a federal court under pendent jurisdiction is a claim against the state that is protected by the Eleventh Amendment.  *Pennhurst State School & Hospital,* 465 U.S. at 121.  And neither "pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."  *Id.* at 121.

That said, the Sixth Circuit has further held that State agencies[6] are immune from 42 U.S.C. § 1981 claims because such claims "are barred by the Eleventh Amendment."  *Sefa v. Kentucky*, 510 Fed. Appx. 435, *437 (6th Cir. 2013) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

Here, the ADB is the adjudicative arm of the Supreme Court for the discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys.  Mich. Ct. R. 9.110(A).  And the Michigan Supreme Court is a division of Michigan's one court of justice, in which the judicial power is vested by the State constitution.  Const. 1963, art. 6, §1.  "Therefore, the Supreme Court is an arm of the state of Michigan and is immune from suit under the Eleventh Amendment.  *See Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 762-64 (6th Cir. 2010).  Likewise, the ADB, as the Supreme Court's adjudicative arm for attorney discipline and supervision, "is also immune under the Eleventh Amendment."  *Sanders*, 2018 U.S. Dist. LEXIS at *19.

Moreover, like *Sanders I*, Sanders fails to plead any of the three qualified exceptions to Eleventh Amendment immunity barring her claims against the ADB.  These exceptions are "[f]irst, a state may waive the protection of the Amendment

---

[6] Although the complaint identified no individual state actors, the Eleventh Amendment would apply to bar Section 1981 claims against state actors. *McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012) (citing *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)).

24

by consenting to the suit." *Lawson v. Shelby County, TN,* 211 F.3d 331, 334 (6th

Cir. 2000). "The second exception to the Eleventh Amendment bar is that

Congress, under certain provisions of the Constitution, may abrogate the sovereign

immunity of the states through statute." *Id.* "Under the third exception, a federal

court may enjoin a 'state official' from violating federal law." *Id.* at 335 (citing *Ex*

*parte Young,* 209 U.S. 123 (1908)).

Here, Sanders pleads no facts averring the State of Michigan or its agencies

have consented to this suit. See *Pennhurst State School & Hospital,* 465 U.S. at

100 ("[I]n the absence of consent a suit in which the State or one of its agencies or

departments is named as the defendant is proscribed by the Eleventh

Amendment."); *Abick v. State of Michigan,* 803 F.2d 874, 876 (6th Cir. 1986)

("Michigan and its agency, the State Judicial Council, under the [E]leventh

[A]mendment, are immune from an action for damages or injunctive relief in

federal court.") (citing *Pennhurst State School & Hospital,* 465 U.S. at 97-98,

104); *Alia v. Michigan Supreme Court,* 906 F.2d 1100, 1105-1106 (6th Cir. 1990)).

Second, Sanders pleads no facts or law that Congress abrogated the State's

or its agencies' Eleventh Amendment immunity with respect to her claims. "'The

[Supreme] Court has held that, absent waiver by the State or valid congressional

override, the Eleventh Amendment bars a damages action against a State in federal

court.'" *Maben v. Thelen*, 887 F.3d 252, 270, n.17 (6th Cir. 2018) (citations

omitted) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  And last, despite

Sanders broad claims averring intentional discrimination against the ADB when it

failed to reinstate her law license (ECF No. 14, PageID.41), and alleging that

because of her race, she was denied the enjoyment and benefits related to an active

status law license (*id*., 67, PageID.41), she does not seek prospective injunctive

relief to enjoin the ADB from violating any federal or state law.

Further, turning to Sanders' money damage claims, "As requests for relief

tied to state-law claims, [the court] need not consider whether they are monetary or

injunctive in nature, because they may not form the basis for an exception to state

sovereign immunity in the federal courts in either event." *Ernst v. Rising*, 427 F.3d

351, *369 (6th Cir. 2005) (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465

U.S. 102, 106 (1984)).  Thus, Sanders' claims and her relief for money damages

and costs against the ADB are barred and dismissal is appropriate under Fed. Rule

Civ. P. 12(b)(1).

For these reasons, Sanders fails to plead an exception to the Eleventh

Amendment immunity barring her state and federal claims against the ADB.

## IV.   Sanders' state law claims are barred by immunity under Michigan's governmental tort liability act and by Michigan court rule.

### A.   The Michigan Governmental Tort Liability Act.

In addition to Eleventh Amendment immunity, the ADB is immune from

suit under the governmental tort liability act (GTLA).  Tort claims under Michigan

law against governmental entities and employees are controlled by the GTLA, Mich. Comp. Laws § 691.1401, *et. seq.* "[T]he grant of immunity in MCL 691.1407(1) . . . is broad and that the statutory exceptions thereto are to be narrowly construed." *Robinson v. City of Detroit*, 613 N.W.2d 307, 316 (Mich. 2000) (citing *Kerbersky v. Northern Mich. Univ.*, 582 N.W.2d 828, 830 (Mich. 1998); *Horace v. City of Pontiac*, 575 N.W.2d 762, 764 (Mich. 1998); *Wade v. Dep't of Corrections*, 483 N.W.2d 26, 29 (Mich. 1992)).

Mich. Comp. Laws § 691.1407(1) provides that "[e]xcept as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise of discharge of a governmental function."  Mich. Comp. Laws § 691.1401(a) and (g) clearly provide that the State and its agencies are governmental agencies protected by the GTLA.  Further, Mich. Comp. Laws 691.1401(b) defines "governmental function" as an activity expressly or impliedly mandated or authorized by constitution, statute, or other law.  The function of the ADB is set forth in Mich. Ct. R. 9.110(E).

Here, the ADB's supervisory and disciplinary duties over attorneys in Michigan are governmental functions immune from tort liability in the absence of an applicable exception to governmental immunity.  See, *e.g.*, *Duncan v. State*, 774 N.W.2d 89, 104 (Mich. Ct. App. 2009) ("The governmental tort liability act (GTLA), MCL 691.1401 *et seq.,* provides a broad grant of immunity from 'tort

27

liability' to governmental agencies, absent the applicability of a statutory exception, when they are engaged in the discharge or exercise of a governmental function.")

The first sentence of Mich. Comp. Laws § 691.1407—incorporating the entire GTLA—provides for limited and narrowly drawn exceptions to the otherwise broad grant of immunity to the state agencies. The purpose of the second sentence of § 7 was to "affirm" the state's preexisting absolute sovereign immunity, which can only be "waived or abrogated …by an express statutory enactment or by necessary inference from a statute." *Ballard v. Ypsilanti Twp.,* 577 N.W.2d 890, 895 (Mich. 1998). Thus, no exception to the State's sovereign immunity from tort liability exists unless it has been incorporated in the GLTA. *See* Mich. Comp. Laws § 691.1407(4), (7).

Here Sanders pleads no facts that will support a claim in avoidance of governmental immunity. Nor has she pled her common law tort claims of intentional infliction of emotional distress, false light violation of privacy, or intentional publication of injurious falsehoods[7] are exceptions to the ADB's statutory immunity under the GTLA.

----

[7] Moreover, Sanders pled no facts proving this decision was published (*See* https://records.adbmich.org/adbmich/en/d/s/index.do?cont=&ref=37845).

Simply, Sanders claims against the ADB are barred by state-law governmental immunities. *See* Mich. Comp. Laws § 691.1407(1); *Sanders*, 2018 U.S. Dist. LEXIS at 30896, *19. Thus, Sanders' state law claims for money damages—including punitive damages—against the ADB in Counts I, II, III, IV, V, and VI are barred and must be dismissed.

## B. Michigan Court Rule 9.125.

Moreover, Sanders' state-law claims against the ADB are further barred by court rule. Mich. Ct. Rules 9.125 provides, in part, that "[t]he commission, the board, and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties." *See also*, *Warren v. Burdi*, 2011 U.S. Dist. LEXIS 14951, 52-53 (E.D. of Mich. 2011). Here, the ADB was executing its supervisory and disciplinary governmental duties by assigning Sanders' Petition for Reinstatement to a hearing panel and in publishing the notices of transfer to inactive status. *See* Mich. Ct. R. 9.110(E). Moreover, Sanders offers no facts averring her claims against the ADB are not barred by Mich. Ct. R. 9.125.

**V.    Sanders' claims against the ADB are barred by the Rooker-Feldman doctrine.[8]**

Lower federal courts lack subject matter jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments.  *Gottfried v. Medical Planning Servs.,* 142 F.3d 326, 330 (6th Cir. 1998) (citing *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415-16 (1923).  When presented with claims that raise issues which were the subject of, or inextricably intertwined with, state court decisions, the inferior federal courts must apply the *Rooker–Feldman* Doctrine and dismiss the claims, even where the inextricably intertwined issues underlying the claims before it were not raised in state court.  *See, e.g., Garry v. Geils,* 82 F.3d 1362, 1369-70 (7th Cir. 1996).  Under the *Rooker-Feldman* doctrine, the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  Where federal relief can only

---

[8] To the extent Sanders' state-law claims of libel, negligence, and defamation against the ADB involving the transfer of her law license to inactive status were previously determined by the merits decision in *Sanders I,* these are barred here by claim preclusion.  *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998); *Sanders Confectionery Prod. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).  Similarly, where these claims were determined by the merits in *Sanders I* and where a final dispositive order was entered, they are barred here by issue preclusion.  *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320–321 (6th Cir. 2014).

be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment. *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir. 1998); *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 755-60 (6th Cir. 2003).

In addition, the Sixth Circuit has held that plaintiff's seeking to challenge orders arising out of state disbarment proceedings and claims of injuries caused by the entry of those state orders, are barred by the Rooker-Feldman doctrine. *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (federal courts do not sit in review of state bar disciplinary proceedings).

Here, Sanders' claims against the ADB are entirely predicated and dependent upon the 2015 state proceedings to remove her as judge and placing her license to practice law on inactive status. (ECF No. 12, ¶¶ 44-48, PageID.38-39.) Sanders' claims against the ADB could only prevail if the state court was wrong— that is, her claims depend upon Sanders establishing that Defendants were incorrect in concluding that she was unfit to serve as judge and practice law. It is apparent on the face of the complaint that Sanders is seeking to dispute the conclusions reached in her state court proceedings. However, such claims are barred by the *Rooker-Feldman* doctrine. See *Blanton*, 94 F.3d at 233-34; *Elrod*, 104 Fed. Appx. at 509.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendant Michigan Attorney Discipline Board respectfully requests that this Honorable Court enter an order dismissing Sanders complaint in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), in addition to any other relief this Court deems just and equitable under the circumstances.

Respectfully submitted,

*/s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown
Assistant Attorney General
Attorney for Defendant
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
P64108

Dated:  September 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record and have mailed a copy to Plaintiff at:

Brenda K. Sanders
P O Box 953
Lincoln Park MI 48146

*/s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown
Assistant Attorney General

32