UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA K. SANDERS,

    Plaintiff,

v.

MICHIGAN ATTORNEY
DISCIPLINE BOARD,

    Defendant.
_____/

Case No. 2:23-cv-10778
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANT'S
MOTION TO DISMISS (ECF No. 20)
AND
TO DENY AS FUTILE PLAINTIFF'S
MOTION TO AMEND CASE CAPTION AND ADD
INDIVIDUAL PARTY DEFENDANTS (ECF No. 27)**[1]

I.    Introduction

This is a civil case. Plaintiff Brenda K. Sanders (Sanders), proceeding *pro se*, is suing defendant the Michigan Attorney Discipline Board (ADB) over the events that that led to her law license from the State Bar of Michigan being placed and maintained on inactive status. Sanders raises numerous claims under both

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

federal and state law. (ECF No. 12). Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 11).

Before the Court is the ADB's motion to dismiss. (ECF No. 20). The motion is fully briefed, (ECF Nos. 28, 29), and ready for consideration. Also before the Court is Sanders' motion to amend the case caption and add individual party defendants, (ECF No. 27), to which the ADB has filed a response, (ECF No. 30). The time for filing a reply has passed. For the reasons set forth below, it is RECOMMENDED that the ADB's motion to dismiss be GRANTED and Sanders' motion to amend the case caption and add individual party defendants be DENIED as futile. If these recommendations are adopted, the case would be dismissed in its entirety.

## II. Background

The following facts are gleaned from the first amended complaint.

Sanders was admitted to the State Bar of Michigan in May 1985. (ECF No. 12, PageID.33). She was a practicing attorney until 2008, at which point she was elected to a judgeship on the 36th District Court. (*Id.*). Sanders served as an elected judge from January 1, 2009 through July 1, 2015. (*Id.*, PageID.34).

Sanders was removed from her role "after she engaged in whistleblower activity to the Federal Bureau of Investigation and the Department of Justice" concerning the deaths of two of her colleagues. (*Id.*). The Department of Justice

disclosed Sanders' tip to others at the 36th District Court. (*Id.*). The Michigan Judicial Tenure Commission then began investigating Sanders' ability to perform her judicial duties. (*Id.*). The Commission determined that Sanders was " 'too mentally ill to perform her judicial duties' " following a report from psychiatrist Norman Miller. (*Id.*).

Following the Commission's determination, the ADB began investigating whether Sanders was fit to practice law in Michigan. (*Id.*, PageID.35). The ADB and/or the Attorney Grievance Commission sent notice of proceedings concerning Sanders' law license to an outdated address to intentionally "gain a distinct advantage in the proceedings." (*Id.*, PageID.35-37). On July 1, 2015, the ADB placed Sanders' law license on inactive status following a hearing for which she never received notice. (*Id.*, PageID.35).

In or around May 2019, Sanders filed a petition of reinstatement requesting that her law license be returned to active status. (*Id.*, PageID.36). On December 8, 2019, the ADB held a hearing on Sanders' petition at which she represented herself and testified. (*Id.*). Sanders answered all posed questions both accurately and competently. (*Id.*). Through her testimony, Sanders "presented factual testimony supporting all of the required criteria for law license reinstatement pursuant to MCR 9.123 (B)(1)-(7)." (*Id.*). On or around March 31, 2020, the ADB issued an order denying Sanders' petition for reinstatement. (*Id.*, PageID.38).

3

### III. Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### IV. Discussion

The ADB raises numerous grounds upon which Sanders' claims against it

could be dismissed in whole or in part. These grounds will be discussed in the following order below: (A) *Rooker-Feldman* doctrine, (B) res judicata, (C) immunity, and (D) failure to state a claim. As will be explained, Sanders' claims are subject to dismissal on all of these grounds.

Sanders has also filed a motion to amend the case caption and add individual party defendants, (ECF No. 27), which will be discussed at the end of this Report and Recommendation.

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is based on the principle that a federal district court does not have appellate jurisdiction to review a state court judgment because that power is reserved to the Supreme Court under 28 U.S.C. § 1257. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 292 (2005). In *Exxon Mobil*, the Supreme Court held that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment."

5

*In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (internal quotation marks and citations omitted).

In support of their argument, the ADB cites *In re Cook, supra*. In *In re Cook*, the Sixth Circuit applied the *Rooker-Feldman* doctrine to similar facts when it considered a disbarred attorney's "claims: (1) that the Ohio courts denied her due process during her state disbarment proceedings; and (2) that these due process violations in her state disbarment proceedings tainted the district court's proceedings." *Id.* at 544. The disbarred attorney devoted "a substantial portion of her argument to challenging the sufficiency of the due process protections she was afforded in her state disbarment proceedings, seemingly challenging the validity of the Supreme Court of Ohio's disbarment order." *Id.* at 547. The Sixth Circuit found that it was "precluded by the *Rooker-Feldman* doctrine from reviewing any claims that challenge the sufficiency of the proceedings afforded [the disbarred attorney] by the State of Ohio[.]" *Id.* at 547-48. It explained that

> [i]n light of the nature of many of [the disbarred attorney's] claims, the *Rooker-Feldman* doctrine applies here and precludes review of any claims arising directly out of [her] state disbarment proceedings or the Ohio Supreme Court's disbarment order. *See Saier v. State Bar of Michigan*, 293 F.2d 756, 759 (6th Cir. 1961) (federal courts do not sit in review of state bar disciplinary proceedings). The proper forum in which to raise such claims was on direct appeal to the Supreme Court of the United States. *See* 28 U.S.C. § 1257. [The disbarred attorney] cannot seek collateral review of her state disbarment proceedings in federal court.

*Id.* at 548.

Here, as in *In re Cook*, Sanders' claims cannot be considered by this Court because they arise directly out of the proceedings leading to the placement of her law license on inactive status and denying her application for reinstatement. Regardless of how her numerous claims are framed, Sanders is challenging these proceedings. The Sixth Circuit has clearly held that under *Rooker-Feldman*, a federal court is precluded from hearing "any claims" challenging proceedings affecting the status of one's law license. Therefore, Sanders' claims against the ADB should be dismissed under *Rooker-Feldman*.

### B. Res Judicata

#### 1. Background

On August 15, 2016, Sanders filed a lawsuit in this Court naming numerous defendants including the ADB. *Sanders v. Mich. Supreme Court*, No. 16-12959, 2018 WL 1466085, at *1 (E.D. Mich. Mar. 26, 2018). The case was assigned to the Honorable Avern Cohn, who summarized the case as follows:

> As best as can be gleaned, plaintiff, a former judge of the 36th District Court in Michigan, claims violations of state and federal law relating to proceedings before the Michigan Supreme Court and Michigan Judicial Tenure Commission which resulted in her removal from the bench. She also claims violations of federal law during her employment as a state district court judge, including Title VII (race, religion, and gender discrimination) and the Americans with Disabilities Act.

*Id.*

Judge Cohn referred all pretrial matters to Magistrate Judge R. Steven

7

Whalen, who recommended that Sanders' claims against the ADB be dismissed as they were barred by Eleventh Amendment immunity as well as Michigan's governmental immunity act. *Sanders v. Mich. Supreme Court*, No. 16-12959, 2018 WL 1101311, at *7-8 (E.D. Mich. Mar. 26, 2018). Sanders' claims against the ADB were negligence, libel, and defamation. *Id.* at *2. Judge Cohn adopted Magistrate Judge Whalen's recommendation, granted the ADB's motion to dismiss, and dismissed the ADB as a defendant. 2018 WL 1466085, at *2. Sanders appealed, but the Sixth Circuit dismissed her appeal for want of prosecution after she failed to timely file her appellant brief. (ECF No. 20-1, PageID.112).

2. Analysis

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

> Under federal common law, res judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Howe v. City of Akron*, 801 F.3d 718, 742 (6th Cir. 2015) (cleaned up).

It is difficult to glean whether Sanders' current lawsuit raises claims related to the initial placement of her law license on inactive status or just her unsuccessful

8

petition for reinstatement. To the extent that Sanders attempts to state a claim against the ADB for libel/defamation concerning actions taken when her license was first placed on inactive status, this claim is barred by the doctrine of res judicata. This is because (1) Judge Cohn entered a final judgment on the merits in Sanders' first lawsuit; (2) both lawsuits include Sanders and the ADB as parties; and (3-4) Judge Cohn dismissed Sanders' claims for libel and defamation against the ADB for the reasons set forth in Magistrate Judge Whalen's Report and Recommendation. Thus, to the extent that Sanders' asserted claim for libel/defamation in this case attempts to relitigate claims previously dismissed by Judge Cohn, that claim should be dismissed as barred by res judicata.

### C. Immunity

The ADB argues that it is entitled to immunity from Sanders' claims under

both federal and state law,[2] first arguing that it is entitled to absolute immunity under the Eleventh Amendment.

As Magistrate Judge Whalen explained when considering Sanders' first lawsuit,

> [u]nder the Eleventh Amendment, the states and their departments and agencies are immune from suit in federal court, regardless of the relief requested, unless the state has waived immunity or congress has expressly abrogated the immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The state of Michigan has not consented to being sued in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

2018 WL 1101311, at *7. Moreover, "[t]he ADB is the 'adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys,' M.C.R. 9.110(A), and as such is also

---

[2] The ADB also argues that it is entitled to absolute immunity under Michigan Court Rule 9.125, which provides that "[t]he commission, the board, and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties." However, the Sixth Circuit has previously "held that a similar broad grant of immunity to the State Bar staff and members and staff of the Board of Law examiners provided for in the Michigan Supreme Court Rules Concerning the State Bar of Michigan (RCSBM) could not immunize any defendant from a § 1983 lawsuit in federal court." *James v. Anderson*, No. 12-10273, 2018 WL 6171474, at *20 (E.D. Mich. Nov. 26, 2018) (citing *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 617 (6th Cir. 2003)). Accordingly, because Sanders' claims against the ADB should be dismissed on other grounds and the Sixth Circuit has cast doubt on whether Rule 9.125 can provide the ADB immunity from at least certain claims in federal court, the undersigned will not further address this argument.

immune under the Eleventh Amendment." *Id.*; *see also Butcher v. Mich. Supreme Court*, No. 07-14940, 2008 WL 2067028, at *3 (E.D. Mich. May 15, 2008) ("This Court finds that the Michigan Supreme Court, the AGC and the ADB are state judicial agencies and enjoy Eleventh Amendment immunity.").

Further, the ADB argues that it also has immunity under the Michigan Governmental Tort Liability Act (GTLA). The GTLA provides that "[e]xcept as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise of discharge of a governmental function." M.C.L. § 691.1407(1). Magistrate Judge Whalen considered the applicability of the GTLA in Sanders' first case, writing that "as state government entities engaged in the exercise of a governmental function, the Michigan Supreme Court, JTC, and ADB all have immunity under Michigan's governmental immunity act." 2018 WL 1101311, at *8 (internal citation omitted).

Thus, as found in Sanders' prior case, the ADB is immune from this lawsuit under the Eleventh Amendment and is also entitled to immunity from Sanders' common law tort claims under Michigan's GTLA. This provides another ground for dismissal.

D.   Failure to State a Claim

As best as can be gleaned, Sanders asserts claims under 42 U.S.C. §1981 for

11

intentional discrimination on the basis of race, the Michigan Elliott-Larsen Civil Rights Act, and Michigan common law for various torts (intentional infliction of emotional distress, intentional publication of injurious falsehoods, libel/defamation, and false light invasion of privacy).

The ADB argues that Sanders has failed to meet the minimal pleading standards for any of her claims. The undersigned agrees. Ultimately, Sanders' "amended complaint fails to present any manner of factual development identifying any particularized acts or omissions implicating the ADB violated any federal or state laws or discriminated against Sanders." (ECF No. 20, PageID.85). Thus, Sanders' claims should all be dismissed for failure to state a claim. While such defects could normally be cured by granting a plaintiff leave to amend her complaint, such an exercise would be futile in this case as the various doctrines and immunities discussed above shield the ADB's official actions from review by a federal court.

### E. Sanders' Motion to Amend/Correct

#### 1. Overview

After the ADB filed the instant motion to dismiss, Sanders filed a motion under Federal Rule of Civil Procedure 15(a) to amend the case caption and to add individual party defendants, (ECF No. 27). In her proposed second amended complaint, Sanders names as defendants "Tim Guerriero, Gail O. Rodwan and

Boyd E. Chapin, Attorney Discipline Board Members, both in their individual and official capacities." (*Id.*, PageID.131). However, throughout the proposed second amended complaint, Sanders references only "the Defendant" and under the parties section lists only information for herself and the ADB. *See* ECF No. 27. Sanders does not make specific allegations against any of the proposed individual defendants, nor does she explain how their acts or omissions formed the basis for any of her asserted claims. The only references to specific acts of the proposed individual defendants are found in Sanders' response to the ADB's motion to dismiss, (ECF No. 28, PageID.148-150), which is an improper place to make factual allegations for the first time and cannot be used to supplement her proposed second amended complaint.

2. Legal Standard

Under Rule 15(a)(2), Sanders is required to obtain leave of court in order to amend her complaint at this stage of the litigation. While "Rule 15(a)(2) provides that '[t]he court should freely give leave when justice so requires,' leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party." *Spigno v. Precision Pipeline*, 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014). "If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may

13

deny the motion to amend as futile and save the parties and the court the expense of having to confront a claim doomed to failure from its outset." *Id.*

### 3. Application

Sanders' proposed second amended complaint names the proposed individual defendants in both their official and unofficial capacities. Any claims for money damages against the proposed individual defendants in their official capacities are barred by the Eleventh Amendment. *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012). Further, even if the proposed individual defendants were not protected by Eleventh Amendment immunity, they "would be entitled to absolute quasi-judicial immunity." *James v. Anderson*, No. 12-10273, 2018 WL 6171474, at *17 (E.D. Mich. Nov. 26, 2018).

> The Sixth Circuit has recognized "that public policy requires absolute immunity for public officials performing quasi-judicial functions in a number of circumstances." *Sparks v. Character and Fitness Committee of Kentucky*, 859 F.2d 428, 430 (6th Cir. 1988). Such "quasi-judicial" immunity, the Sixth Circuit continued, "has been *granted to members of an attorney disciplinary committee*, to a state bar association conducting disciplinary proceedings, to lawyers serving on a mediation panel, to the court's clerk for acts within the scope of his quasi-judicial duties, to 'friends of the court,' and to prosecutors engaging in prosecutorial activity." *Id.* at 430-31 (internal citations omitted).

*Id.* (emphasis added).

Here, the proposed individual defendants were all acting within the scope of their duties as ADB hearing panelists during the events giving rise to this lawsuit. *See Eston v. Van Bolt*, 728 F. Supp. 1336, 1338-39 (E.D. Mich. 1990) (finding that

14

members of the ADB, "the adjudicative arm of the Supreme Court" responsible for discharging the Michigan Supreme Court's duty of supervising and disciplining attorneys, were entitled to absolute quasi-judicial immunity at all times when performing their statutory functions). Thus, they are entitled to quasi-judicial immunity in the alternative to their entitlement to absolute immunity under the Eleventh Amendment. Accordingly, adding the proposed individual defendants as defendants to this lawsuit would be futile as they would all be entitled to dismissal on immunity and potentially other grounds.

## V.     Conclusion

For the reasons stated above, it is RECOMMENDED that the ADB's motion to dismiss, (ECF No. 20), be GRANTED. It is further RECOMMENDED that Sanders' motion to amend the case caption and add individual party defendants, (ECF No. 27), be DENIED as futile. If these recommendations are adopted, the case would be dismissed in its entirety.

Dated: February 21, 2024  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

15

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 21, 2024.

<div style="margin-left: 3em;">

s/Julie Owens acting in the absence of Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager

</div>